Argument 17-1448 MACOM Technology v. Infineon Can I just short-circuit you to pick up where your friend left off? Because, frankly, the 65D issue is the one that I'm struggling with the most. I can only speak for myself. It does certainly seem to me that seeking contempt on the details that are included in Paragraph 3 would clearly bump up against our precedent and would be arguably unworkable. So can you tell me why your argument for justifying the scope of this injunction? Absolutely. So as a starting point, remember that the district court in the Ninth Circuit has broad discretion to fashion equitable relief to remedy the irreparable harm. Sure. Okay. Here, I think you said it and you hit it right on when you said, isn't this a different type of case? This is a different type of case because this is a contract case. Yeah, I know, but if we're talking about contempt, couldn't infringement and breach of this implicate? We're talking about infringement. We're talking about not a breach of contract case necessarily, but really having to do the kind of analysis we do in our patent jurisprudence. And we agree and acknowledge that to prove contempt, we do have to show that they're practicing one of the patents. That being said, I think it's too high of a standard to require the district court to have laid out claim constructions for 39 patents. That may not be the solution to the problem. The solution to the problem may be this is just overbroad at this stage of the case. We don't believe that it's overbroad. I mean, they couldn't possibly, even if you laid out every claim in the patents. I mean, if they come up with a new product tomorrow, that product could arguably be subject to contempt proceedings under this injunction, right? If it practices one of the patents. I think I asked a question relatedly. It seems that you've shown a likelihood of success that your client didn't breach the contract, right? My client didn't breach the contract? There's a likelihood of success that there's been no breach, and therefore Infinium must honor its obligations under the contract. That's what you showed, right? That's correct. Okay. That's what you showed likelihood of success on. Have you showed likelihood of success that they are infringing? No, we have not. You did not. So why does your injunction get to prevent them from infringing? It's because of the way the contract was drafted here. So they own these patents. There are three dozen patents that they have owned for the past seven years that they have been prosecuting, that they understand that they wanted to own because everyone understands that these are foundational patents. Everybody understands, and it's within the context of their record, that there is no commercially feasible way to get around these patents. They haven't denied that. They've contested that we haven't put in evidence on that point, and it's correct that we did not put in an expert report on that point, but they haven't actually affirmatively denied that. And in the context of the contempt proceedings, the- Wait, just back me up for a minute. I want to get you back to Judge Prost's question because I'm afraid I diverted you. So one thing is you mentioned that the district court has great discretion to have an injunction. I agree that there's discretion on whether to grant an injunction, but isn't compliance with Rule 65D reviewed de novo? That is correct, but I will also say that they haven't cited a single case in the context of contract law out of the Ninth Circuit or anywhere else that has said that this kind of injunction in a contract, a license case, is improper. They've only cited authority from the Federal Circuit that's arisen in the context of patent cases. And I think it's fundamentally different when you take- What's your best case on your side? I would say the best case on our side is probably the Boardman case, which is a case where the Ninth Circuit enjoined conduct that the enjoined party argued was actually allowed by a contract, but the court said, the Ninth Circuit said, that that conduct amounted to effectively preparing to do something that was enjoined. Let's talk about the elephant and the dancing hippopotami lining the back of the room, which is to say the next case. Yes. And leaving aside whether the court acted improperly because the matter was on appeal, the court took certain action. And if we determined that that was properly before the court, what do you think about that action the court took? Leaving aside the propriety of the court doing it, as opposed to us sending it back down and having it done over again. Setting aside the jurisdictional issue, we think- Let me say this. The parties have both said that Section 2.1 is unambiguous. We just read it very, very differently. And in California, the test is- What they do is- We all read the case in the law school, the Pacific Gas and Electric case. What they do is the judge kind of takes a peek at the parole evidence to see if there's a latent ambiguity in the contractual provision. To see if there's something in it that would lend itself to a meaning that would be different than the plain and ordinary meaning of the words. And if the district court concludes that there is a latent ambiguity, then they admit the parole evidence and analyze it. Here, we submit that- Setting aside those jurisdictional issues, if you get to the full record, we submit that the Section 2.1 is unambiguous, and that you cannot simply read out that language in the first sentence that talks about how the exclusive license is exclusive, including as against IR. And the reading that Infineon gives to Section 2.1 completely eviscerates those words. The parties here, we think, pretty clearly knew how to spell it out specifically when IR was retaining some right. That's the beginning of the second sentence, where they say, notwithstanding the foregoing, IR retains the right under the license patents to design, develop, make, so forth, in the field of use. So the suggestion that they would then immediately, in the second part of that sentence, take away rights by silence and not specifically say what IR was retaining, to us is not credible, and it can't be read that way. We read that second sentence about the notwithstanding part to clarify the somewhat unusual and what would otherwise be perhaps confusing relationship between the field of use and the exclusive field. And I think that we submitted a diagram, a graphic, on page 8 of our red brief. We read that language in the notwithstanding section as being designed to clarify that relationship between the blue, the ring, the donut that goes around that green exclusive field in the middle. The elephant I see is different than the elephant I don't see. Can I bring you back to paragraph 3 of the injunction? Absolutely. Okay. I thought he was going to say what happens the next case, which was not your next case, but the next case that comes before the district court in contempt. You could be dealing with a product that isn't on the market yet. Some new product or design goes on the market next month, and you say it infringes one of the 35 patents. We don't know which one of them. And that is supposed to be adjudicated in the context of a contempt proceeding? Really? I mean, maybe you have an example of when that's happened before, but certainly in patent world, I don't recall ever seeing a kind of contempt proceeding that does that. And, in fact, I think it's exactly that reason that results in our case law saying, no, no, no, no, this is not the way we run contempt here. So what I will say is that the order that we proposed to the court didn't include that language about practicing the nitronics patent. It's argued that you can't do game on silicon in a commercially feasible way without practicing them. Infineon asked that that language be added, and the court added it during that period of time last November when the parties were considering her proposal. I appreciate that, but that doesn't do me any good because we're left here adjudicating. You are here defending Paragraph 3, and they are here challenging Paragraph 3. So that's what we're left with. Well, that's fair, but it's also fair to say that they asked for that language to be added, so now for them to challenge the injunction because they got what they wanted puts us in a little bit of an untenable position. We would have preferred that that language not be there and that they be prohibited from operating in our exclusive field at all as a blanket statement. Oh, so this was a limiting, in that context of the fight we were having, that was limiting. But you're not suggesting that they waived their right to challenge the breadth of Paragraph 3 in this injunction, right? No, no, we are not suggesting that. Did you want to hear about the Shaw case and the good faith and fair dealing? Sure, sure. Did you look in the restatement? I'm just curious. Did we look? I'm sure we did. I don't recall what the answer was. I don't think there was anything particularly on point, although I don't remember off the top of my head, so I don't want to say that firmly. I seem to remember it being in there. Well, let me say this. There is a very well-developed body of case law in California about the covenant of good faith and fair dealing. And what everyone here agrees is that when you use the implied covenant of good faith and fair dealing, it has to be hinged on a particular contractual term. The point of the implied covenant of good faith and fair dealing is that the promises that you make have to be executed in good faith. So if I promise to one of you that I'll mow your lawn and you're going to give me some money for it, and I come in and I cut off a centimeter and you look at it and can't tell anything's been done, you can say, hey, you need to perform here. I've been deprived of my bargain because we both understood that you were going to be mowing my lawn for real. You can't imply from the promise to mow the lawn that you're going to do something else, that you're going to trim the trees or paint the garage. What has happened here in this case is that there's patent license. And at its core, a patent right is the right to exclude. That's 35 U.S.C. 154. And what a patent license is is the waiver of a right to sue. And so when I say to you I license you to practice these patents, what I'm saying is I won't sue you when you practice these patents. And when the promise is I license you in the field of use only, and that's the new hinge that they've hooked onto that was never argued below, there was nothing about the word only that was the focus of the court's briefing or decision below. When I say I promise not to sue you in the field of use only, that doesn't imply I'm not going to sue you when you operate outside the field of use. If anything, it implies the opposite. And here when you look at the use of the word only within the context of Section 2.1, it's actually used twice. IR says that they give a worldwide royalty-free exclusive license in the field of use only, and also in the exclusive field only. And I think when read in context and considered in the entirety of this somewhat confusing relationship that they were setting up with the different fields and the overlapping fields, I think it's pretty clear that the use of the word only there was designed to distinguish and point out and remind the reader, hey, we're talking about the field of use here in Part A, hey, we're talking about the exclusive field here in Part B. Your adversary, I'm not even sure that this is particularly relevant, but I'm curious, your adversary suggests that the patent portfolio covers not just silicon substrates, but also silicon carbide substrates. Do you agree? That the patents? The patent portfolio. The patent portfolio. I think there are some in the portfolio that can be read to cover it. I don't know off the top of my head if those had issued already as of 2010, and they may or may not have. So I don't know that that was top of mind. What I will tell you was that the relationship between nitronics and IR for many years had involved only gain on silicon, and that was the focus of the 2004 agreement and the 2010 agreement. The other thing that I would say is that thinking ahead to kind of what would be the ramification of adopting their argument that it's a per se breach of the implied covenant of good faith and fair dealing every time you exceed the scope of a license, it is incredibly common for big companies to cross-license other companies in a particular geography to a particular part of their patent portfolio to a particular field of use. When you have two big companies, Apple and Samsung, IBM and Dell, whoever it is, who have these cross-licenses, all of a sudden if somebody steps one step over the field of use, the geography or whatever it is that they're granted, all of a sudden that becomes grounds for termination because it's a breach of the implied covenant of good faith and fair dealing every time. And instead it's your position that it's simply a patent infringement. Exactly. The patent laws provide a full remedy here. There's no reason to extend contract law in the way they're describing. They point to the Shaw case, which is obviously, as you recognize, a Vermont case from 1966. There have been a lot of cases since then. Well, a lot would be a stretch, but there have been half a dozen cases since then that could easily have followed this implied covenant of good faith and fair dealing reasoning. None of them have. And you can say that the law is in disarray, but those cases really all hang together remarkably well. They all say if there's an express negative covenant, you enforce it. There's not one here. They all say you can imply one in fact if there's been a technology transfer that has enabled the licensee to go beyond the scope. That's not here. And they're correct that Shaw is the only one that then has gone on to consider the implied covenant of good faith and fair dealing, but the other ones could have and didn't. And that would have been an easier path in some of them to the resolution that came out. And so I think that it's fair to say that this would be a substantial expansion of the law to adopt their argument. Your time has expired. Okay. It says I have 30 seconds, but I will sit down. No, that's over the expired. Oh, sorry. Thank you. Thank you. So one thing on the injunction, Your Honor, because counsel said that we asked for the provision of the patent to be put in. Yeah, I was going to ask for clarification about that. You know, that's like an inviting error argument, but they don't really make an inviting error argument. It would have been error not to include some limitation on the patents in the injunction because what the district court was enjoining us from was violating the exclusive license provision, which required practice of the patent. So the broader injunction would have been an error. And in the same brief where we said you can't just enjoin us from practicing in the exclusive field because they even said we could do that as long as we didn't infringe the patents. So you can't just say we can't practice in the exclusive field. It has to be cabined to the patents. But we also argued in the same brief that that injunction still would violate Rule 65 because it prescribes us from practicing patents, and that violates the specificity requirement of Rule 65. Can I, for clarification, are you saying that the injunction, the third paragraph, should be deleted in entirety or should it be modified? It should be deleted in its entirety. That's what I thought you were saying. Yeah, what we had argued in the district court is that it would have been error to give an even broader injunction because all the license agreement proscribes is violating their exclusive patent license. They wanted to say we couldn't sell products in the exclusive field whether they violated the patents or not. A couple responses to some points that counsel raised on the duty of good faith and fair dealing. Not every state has the duty of good faith and fair dealing, number one. Number two, the parties here chose California law. California law in the duty of good faith and fair dealing and implied in law covenant looks more at fairness, fundamental fairness in good faith, than do other states. Yes, in these other cases, maybe the parties could have raised good faith and fair dealing, but they didn't. So those cases aren't really relevant to the question before the court. That's not the legal theory we are espousing. We are espousing the duty of good faith and fair dealing, which is an implied in law covenant. Second point I want to make is that the California case law, counsel referred to this textual hook argument. Two clarifying points there. Number one, the California law does not require the implied duty of good faith and fair dealing to violate a particular contractual provision. The Carer case makes very clear that the obligations are imposed by law based upon the expectations of the parties due to the purpose of the contract, not particular provisions within the contract. The purpose of the contract overall. That is why Shaw found a violation for the same reason. The expectations of the parties were that the parties wouldn't go outside the field of use. The second point is the textual hook. They keep saying, well, this only argument that we're making is new on appeal. It is not new on appeal. What we argued below was that the text of the contract, which led to the violation of the duty and good faith and fair dealing, was the field of use limitation, which is the same basis that the Shaw court found the implied duty of good faith and fair dealing was violated under the same policy that California follows. So that was the basis for our argument, not the only language in the contract. The only language is simply an additional argument in favor of our position, which is perfectly acceptable under CCS fitness. Thank you.